Ma rtin, J.
delivered the opinión of the Court. Two questions present themselves for the dfccision of this Court.
*669 1. D i d the office of s eel by the plaintiff ever pecial administrator, claim-1 " ‡ exist ?
2.'If it did, was it afterwards abrogated by any subsequent Taw ?
I. It is said it never existed for offices cannot be created in any other manner than by law, and the person, who issued the ordinance creating this, had no legislative power.
It is not easy for us to determine, what were the legitimate powers ot a Governor-General and Intendant of the Spanish province of Louisiana. It is clear, that some of the persons who filled that office exercised legislative power. The extent of the authority of that officer was certainly often eiw larged . by instructions from the crown and the limits of it which perhaps were never accurately defined in practice, cannot at the present time be with facility discerned. The President of the U. S. seems to have believed that the commission he granted to the then Governor of the Mississippi Territory, vesting him with the powers of Governor-General and Intendant of Louisiana, , clothed the grantee with some legislative authority, since he excepted the right of taxation from the grant. The grantee, issuing the ordinance creating the office, construed his commission as extending to die exercise of legislative authority iu this and some other instances, in which he was not censured ; the Superior Court of the late territory si- *670 lentJy sanctioned his.conduct by sustaining suits and giving judgments in favor of the officer and the legislature,, as late as in 1809, imposed certain duties on him. Till the institution of the present suit, during the whole territorial government, no doubt appears to have been entertained of the constitutional and legal existence of the office. Many estates, some of great value, have been settled by the special administrator. It would be attended with monstrous inconveniencies, if by declaring that the office never legally excited the Court was to annul all the transactions of the various incumbents who have filled it.
When in the case of Stuart vs. Laird, 1 Cranch 309, a judgment was sought to be reversed, on the ground that the Judges of the Supreme Court of the U. States had no right to sit as circuit judges, not being appointed as such : or in other words that they ought to have distinct commissions for that purpose ; that Court thought it sufficient to observe that practice and acquiescence for a period of several years, commencing with the organisation of the judicial system, afforded an irresistible answer, and had indeed fixed the construction ; that it was a cotemporary interpretation of the most forcible nature, and this'practical exposition was too strong and too obstinate, to be shaken or controlled, they concluded that the question was now at rest and ought not now to be disturbed. Here practice has fixed the proper construction of *671 the powers of the officer who issued the ordinance ; the judicial and legislative authorities of the late government have sanctioned the constru ction. Optima legum interpres consuetudo. If it was an erroneous one, it is the case to say communis errorJacitjus. It began with the organisation of the American government here ; the question is to be considered now as at rest, and ought not to be disturbed.
II. The power and duty of the officer were confined to the estates of persons dying in the city of New-Orleans, without having a residence of two years, leaving neither lineal relations, nor collateral ones of the first degree, nor husband or wife.
Some months after the creation of the office, courts of probates making a general provision for the administration of the property of intestates, were established by the legislative council in 1805. This was never held to interfere with the duties of the special administrator, whose office it was to secure the property till the appointment of an administrator.
\ In 1808, the Civil Code was published. This act purports to be a digest of the law, theretofore in force ; a decláratory act. The person, who, according to it is to attend to the estate of an intestate, in the absence of the next of kin is called a curator. The expression of the civil law corres *672 ponding to that of the English or American law; Administrator.
We conclude that neither the act of the legislative council, nor the Civil Code have repealed the ordinance under consideration.
A general provision does not repeal a particular one by implication. If a particular tiling be given or limited in the preceding part of a statute, this shat! not be altered or taken away by subsequent. general words of the same statute: 6 Bacon’s Abr. 231, verbo Statute. Stanton vs. Univ. of Oxford, 1 Jones, 26. In this case, the provision was not in the same statute, but it was in one in pari materia and all such are to be taken as ifthey were one. Douglas, 30.
Unless the ordinance cannot exist with the Civil Code, it must be holden unrepealed. Now, the duties it imposes are not more at war with the provisions of the Civil Code, than with the act of the legislative council. We conclude it is not repealed.
The judgment of the District Court must therefore be annulled and reversed, and the cause, must be remanded thither with directions to proceed to the trial.